UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **United States Conference of Mayors**<br>1620 Eye Street, NW<br>Washington, DC  20006<br><br>&<br><br>**United States Mayor Enterprises, Inc.**<br>1620 Eye Street, NW<br>Washington, DC  20006<br><br>    Plaintiffs,<br><br>    v.<br><br>**Great-West Life & Annuity Insurance Co.**,<br>8515 East Orchard Road<br>Greenwood Village, Colorado  80111<br><br>    Defendant. | **COMPLAINT**<br>**JURY TRIAL REQUESTED**<br><br><br>Case 1:16-cv-00660-TFH |

**FIRST AMENDED COMPLAINT**

United States Conference of Mayors ("USCM") and United States Mayor Enterprises, Inc. ("USME") (collectively "Plaintiffs") bring this action against Great-West Life & Annuity Insurance Company ("Great-West") and state as follows:

**INTRODUCTION**

1.      This action arises out of two contracts: (1) a License Agreement between USCM and Great-West and (2) a Joint Marketing and Training Agreement ("JMTA") between USME and Great-West.  Both contracts relate to the administration of the USCM's sponsored Retirement Program ("Program").

2. Consistent with USCM's mission to better U.S. cities, the Program was established in the late 1970s and offers deferred compensation and retirement solutions to cities and other local government entities and to their employees. The Program was designed to assist cities and their employees in establishing an increased measure of financial security for the future.

3. Since 2012, Great-West has administered the Program, which offers a Section 457 deferred compensation plan product together with fixed and variable investment options. Plaintiffs chose Great-West to administer the Program because Great-West promised dedicated staffing and favorable growth projections that would inure to the benefit of cities and their employees.

4. Over the course of the Parties' contractual relationship, it has become clear that Great-West materially misrepresented its ability or willingness to meet its contractual obligations under the JMTA and the Licensing Agreement and it consistently has failed to abide by the Contracts' material terms. Great-West's failure to abide by material terms of the Contracts, including non-payment of fees, has caused monetary and reputational harm to Plaintiffs and the Program, as discussed more fully below. Plaintiffs seek orderly termination of the JMTA and Licensing Agreements (collectively "Agreements" or "contracts"), payment of monies owed to Plaintiffs under the contracts, and money damages for Great-West's breach of contract and breach of the implied covenant of good faith and fair dealing, as well as attorneys' fees and costs as permitted by the Agreements.

## PARTIES

5. USCM, incorporated in Illinois, is a non-partisan organization representing cities with populations of 30,000 or more. USCM acts on behalf of, and seeks the betterment of, U.S. cities.

6. USME is a Delaware corporation and a wholly-owned subsidiary of USCM. USME markets and presents products to U.S. cities and employees thereof. These products include, but are not limited to, deferred compensation and retirement products and services.

7. Great-West, a Colorado corporation, is an indirect, wholly-owned subsidiary of Great-West Lifeco, Inc. Great-West develops, designs, and provides deferred compensation and retirement savings products and related services to the public and private sector.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

9. This Court is a proper venue because a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia. 28 U.S.C. § 1391(b)(2) (2012).

## FACTS

10. USCM established the Program in 1977, consistent with its mission to better U.S. cities. The Program offers deferred compensation and retirement solutions to cities and their employees, with the intent that cities and their personnel would benefit from the enhanced employee morale, secure workforce, and financial security that derive from a retirement plan. The Program permits cities and their employees to avail themselves of financial and tax incentives to build a secure foundation for retirement.

11. The Program was administered by another company from the late 1970s–October 2012.

12. In the spring of 2011, USCM began to consider replacing that company as Program administrator and considered, among other candidates, Great-West. Sometime in the summer of 2011, USCM requested that Great-West prepare projections and a program proposal.

13. On or about November 2, 2011, Great-West, at Plaintiffs' request, provided revised "worst case scenario" projections which showed payments to Plaintiffs in excess of $1 million. These projections represented a significant increase in projected revenue to Plaintiffs than expected under the prior administration of the Program with a significant reduction in cost to city employees. Great-West also provided a signed proposal dated November 18, 2011, which summarized the concept for the arrangement.

14. During further pre-contractual negotiations about the Program–including at in-person meetings in the summer and fall of 2012–Great-West made numerous representations to Plaintiffs about Great West's financial projections, substantial dedication of resources to the sales and marketing of the program, and the superiority of Great-West's product to its competition.

15. In reasonable reliance on Great-West's representations, Plaintiffs terminated its contractual relationship with the prior company in October 2012 and entered into a contractual relationship with Great-West.

16. On October 1, 2012, USME and Great-West entered into the JMTA, which obligates USME and Great-West to work cooperatively to market and implement the Program. Section 2.1 and Attachment A to the JMTA outlines Great-West's responsibilities, which include the design and development of the program, the "settling of fees," and assembling fully-dedicated staffing.

17. On October 1, 2012, USCM and Great-West also entered into a License Agreement. Under the terms of the Licensing Agreement, Great-West and USCM granted a license to use each other's trademarks "in connection with, and in furtherance of the goals of, the Program." Under the terms of this agreement, USCM was entitled to royalties, which increased when additional participants joined the Program.

18. Plaintiffs have since learned that the projection summaries presented by Great-West during the 2011-2012 contract negotiations were grossly overstated. From the outset of the Program, fee income received was and continues to be significantly lower than the projections prepared by Great-West. No part of Plaintiffs' compensation comes from city employees.

19. Moreover, Great-West also failed to meet the staffing promises it made during the contractual negotiations and required by Attachment A to the JMTA. Specifically, at a 2012 "kick-off" meeting, Great-West promised that it would task 50 Plan Counselors with sales duties, but these Counselors were not provided consistently. Additionally, the sales staff provided to the Program were very inexperienced and not the tenured, experienced staff Great-West promised to provide and there was a prolonged period of time when the program manager position was vacant or not staffed adequately and no staff members were fully dedicated to sales.

20. By contrast, USME dedicated substantial resources and efforts to transition clients to Great-West, as contemplated by the JMTA. Indeed, USME exceeded its obligations under the JMTA and visited sixty cities between October 8 and December 31, 2012. USME continued to provide the same experienced high-level staff and offered additional resources to ameliorate Great-West's lack of staffing.

21. Great-West repeatedly restructured its staffing, but failed to demonstrate the expertise needed to execute an effective marketing plan and provided no consistent leadership of

the Program. As a result of Great-West's failure to dedicate the promised resources, the Program lost traction in the market and suffered reputational damage and loss of good will.

22. Additionally, between 2012 and early 2015, Great-West executives integral to Great-West's administration of the Program retired or otherwise left Great-West. The turnover at Great-West prevented the Program from gaining traction in the market.

23. Great-West failed to disclose completely or materially misrepresented a conflict of interest with its state business. Although Great-West disclosed that it had a state business portfolio, it did not disclose the extent to which the conflict would affect its administration of the Program and in fact, stated that the conflict would not affect the Program. Great-West's existing state business portfolio caused Great-West to base tactical and marketing decisions on whether the decisions would impact favorably Great-West state business often to the detriment of the Program.

24. Great-West also has failed to provide Plaintiffs with updated sales reports for some time, despite Plaintiffs' repeated requests for the information. This withholding of information has frustrated Plaintiffs' ability to determine the amount of Great-West's non-payment under the agreements. Great-West has provided Plaintiffs inaccurate or incomplete information since approximately May 2014 and has not provided a sales report since approximately March 2015.

25. Under the terms of the JMTA, Plaintiffs are entitled to fees for any sales that take place from any small to medium-sized city or municipal entity. Great-West has refused to provide Plaintiffs with the information necessary to track the dollar amounts of sales, payments received, and payments due.

26. For example, Plaintiffs are entitled to fees from Great-West's sale to the city of Tallahassee, Florida.

27. Despite several years of expressed concern by Plaintiffs regarding Great-West's administration of the program and despite Plaintiffs' efforts to reinvigorate the Program and compensate for Great-West's shortcomings, Great-West has largely been unresponsive and has failed to ameliorate its contractual failings.

28. On December 22, 2015, Plaintiffs notified Great-West of its intention to terminate the Agreements for cause, as a result of Great-West's non-payment and other contractual breaches.

## COUNT I
## BREACH OF CONTRACT

29. Plaintiffs repeat and restate the allegations set forth in paragraphs 1 through 28 as though fully set forth here.

30. On approximately October 1, 2012, Plaintiffs and Great-West entered into the JMTA and Licensing Agreements. Since the outset of the agreements, Great-West has failed to meet the responsibilities outlined therein.

31. Great-West breached its obligations under the Agreements by: (1) failing to dedicate adequate resources and support to the offerings and promotion of the program; (2) failing to execute an effective business plan, including failing to modify the plan to make it more competitive and failing to focus on the small/medium size city market; (3) failing to pay Plaintiffs monies owed under the JMTA; and (4) intentional and material omissions or misrepresentations in pre-contractual negotiations including a conflict of interest.

32. Great-West's breach has caused Plaintiffs to be harmed by: (1) incurring expenses to compensate for Great-West's inability to market and expand the Program; (2) suffering the

7

loss of Program participants and potential participants; and (3) damages in excess of $75,000 to be proven at trial.

## COUNT II
## BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

33. Plaintiffs repeat and restate the allegations set forth in paragraphs 1 through 32 as if fully set forth here.

34. On approximately October 1, 2012, Plaintiffs and Great-West entered into the JMTA and Licensing Agreements.

35. Great-West willfully acted to frustrate the purposes of the contracts by failing to commit the resources necessary for Program success, refusal to customize the Program to benefit public employees, and failure to engage and cooperate with Plaintiffs, despite Plaintiffs' repeated overtures, to improve the Program's performance.

36. During the negotiation of the contract, Great-West also withheld material facts from Plaintiffs, including a material conflict of interest with Great-West's state business. This conflict has caused Great-West to make business decisions to benefit its own business portfolio rather than to benefit the Program, frustrating the purpose of the contracts.

37. As a direct and proximate result of Great-West's breach, public employees have not been served and Plaintiffs have been harmed by the decreased monetary and reputational value of the Program, forgone royalties and payments under the Agreements, and lost opportunity over the course of the Program.

38. As a result of Great-West's breach of the implied covenant of good faith and fair dealing, Plaintiffs have been harmed by failing to receive payment for monies owed under the contract and has suffered damages in an amount in excess of $75,000 to be proven at trial.

## PRAYER FOR RELIEF

39. WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Great-West as follows:

    a. For all damages caused by Great-West, plus attorneys' fees and costs, in an amount in excess of $75,000 to be proven at trial.

    b. Grant Plaintiffs such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a trial by Jury on all issues so triable.

Dated: September 30, 2016                  Respectfully submitted,

                                                 /s/ *Margaret H. Warner*
                                                 Margaret H. Warner (D.C. Bar. No. 359009)
                                                 (mwarner@mwe.com)
                                                 Erika N. Pont (D.C. Bar No. 984578)
                                                 (epont@mwe.com)
                                                 McDermott Will & Emery LLP
                                                 The McDermott Building
                                                 500 North Capitol Street, NW
                                                 Washington, District of Columbia 20001
                                                 202.756.8000
                                                 202.756.8087 fax

                                                 *Counsel to Plaintiffs*