UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES CONFERENCE OF MAYORS,** *et al.*,

      **Plaintiffs,**

v.

**GREAT-WEST LIFE & ANNUITY INSURANCE CO.,**

      **Defendant.**

Civil Action No. 16-00660 (TFH)

# MEMORANDUM OPINION

  Defendant Great-West Life & Annuity Insurance Company ("Great-West" or Defendant) has moved to preclude the United States Conference of Mayors and United States Mayor Enterprises, Inc. (collectively, "the Mayors" or Plaintiffs) from presenting evidence, testimony, and argument relating to categories of damages that Great-West claims their contract excluded in what Great-West argues is an exclusive remedies provision governing all claims in the contract. Def. Mot. *in Limine* to Exclude Improper Damages Evidence, Testimony, and Argument, at 1-2, ECF No. 98 (hereinafter Mot. to Exclude). Plaintiffs respond that Great-West refers to language that appears in the contract's indemnification section and refers to third-party claims, but not to disputes arising between the parties. Each party argues that the contract unambiguously supports its view. Upon consideration of the motion, opposition, contract language, and relevant case law, the Court agrees with that the contract is unambiguous and finds that Plaintiffs have the better reading. Therefore, Defendant's Motion is denied.

**BACKGROUND**

The parties are familiar with the facts relevant to this motion. Nevertheless, a brief recitation is appropriate. The United States Conference of Mayors ("USCM") is "a non-partisan organization of cities with populations of 30,000 or more." Am. Compl. ¶ 5, (ECF No. 22). USCM's wholly-owned subsidiary, United States Mayor Enterprises, Inc., markets certain products to cities and their employees, such as deferred compensation and retirement products and services. *Id.* ¶¶ 2, 6. In 2012, Plaintiffs entered into two contracts with Defendant Great-West relating to USCM's Retirement Program: (1) a License Agreement between USCM and Great-West, and (2) a Joint Marketing and Training Agreement ("JMTA") between USME and Great-West (collectively, the "Agreements"). *Id.* ¶¶ 1, 16. Both Agreements included an initial ten-year term. JMTA ¶ 4.1; License Agreement ¶ 6.1.

In December 2015, Plaintiffs notified Great-West of their intention to terminate the Agreements for cause due to Great-West's non-payment and other contractual breaches. Am. Compl. ¶ 28. The parties initially agreed to mediation as set forth in the Agreements' dispute resolution provisions, but were unable to agree whether the mediation should take place in Washington, D.C., or Denver, Colorado. March 15, 2016 Letters to JAMS (ECF Nos. 9-12 & 9-13). Plaintiffs filed their Complaint on April 7, 2016. (ECF No. 1). Defendant challenged venue, but on August 31, this Court found Defendant had failed to show that considerations of convenience and interests of justice weighed in favor of transfer. Plaintiffs filed their First Amended Complaint on September 30, 2016, alleging breach of contract and breach of implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 29-38 (ECF No. 22). Defendant filed its Answer and Counterclaim to the Amended Complaint on October 17, asserting counterclaims for

breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment, (ECF No. 26), and Plaintiffs filed their Answer on October 28, (ECF No. 28).

The Agreements include many provisions not at issue in this Motion. The question currently before the Court is whether the parties contracted to limit the types of damages they could seek if a dispute arose between them. Mot. to Exclude at 4. The Court finds that the parties did not and so denies Defendant's motion.

## LEGAL STANDARD

"[A] contract is not ambiguous merely because the parties do not agree over its meaning, and courts are enjoined not to create ambiguity where none exists." *Hensel Phelps Constr. Co. v. Cooper Carry Inc.*, 861 F.3d 267, 272 (D.C. Cir. 2017). In interpreting contracts, "D.C. courts 'adhere[] to an objective law of contracts.'" *Id.* (quoting *Carlyle Inv. Mgmt. LLC v. Ace Am. Ins. Co.*, 131 A.3d 886, 1894–95 (D.C. 2016)). "The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms, and ascertaining the meaning in light of all the circumstances surrounding the parties at the time the contract was made." *Id.*; *see also United States v. Bank of Am.*, 78 F. Supp. 3d 520, 527 (D.D.C. 2015) ("[A] cardinal principle of contract construction [is] that a document should be read to give effect to all its provisions and to render them consistent with each other."). The language should be understood according to its "plain meaning." *Id.* (citing *Debnam v. Cran Co.*, 976 A.2d 193, 197 (D.C. 2009)). Only ambiguous contract provisions require the factfinder to weigh in on the correct interpretation. *Debnam*, 976 A.2d at 197–98. So, to begin "courts determine what a reasonable person in the position of the parties would have thought the disputed language meant." *Hensel Phelps*, 861 F.3d at 272; *see also Steele Foundations, Inc. v. Clark Constr. Group, Inc.*, 937 A.2d 148,

154 (D.C. 2007) ("Fundamentally, when interpreting a contract, the court should look to the intent of the parties entering into the agreement.").

"While parties are free to enter into indemnification agreements . . . such agreements are narrowly construed by courts 'so as not to read into [them] any obligations the parties never intended to assume.'" *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C. 1993) (quoting *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990)). Indeed, "to find that a party contracted away its own liability by receiving full indemnity therefor, there must be clear intention to do so that is apparent from the fact of the contract." *Id.*; *cf. United States v. Seckinger*, 397 U.S. 203, 212 (1970) ("In short, if the United States expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract.").

## ANALYSIS

Great-West argues that exclusive remedy provisions are common, "often limiting speculative and uncertain damages caused by parties' unrealized hopes." Mot. to Exclude at 4. But the citations supporting this proposition are not instructive in this case.[1] The problem in this case is not whether it is possible to bargain for an exclusive remedies provision, but rather, whether it is clear from the face of the contract that the parties in this case actually did. And contract interpretation in the context of liquidated damages and exclusive remedies, as much as

---

[1] *See Bailey v. CitiMortgage, Inc.*, 13 F. Supp. 3d 29, 32 (D.D.C. 2014) (finding that a contract addendum's limitation-on-damages provisions did not meet the criteria for an unenforceable adhesion contract); *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 24, 26 (D.D.C. 2013) (discussing the validity of a liquidated damages clauses under D.C. law where "bargained-for" and where the parties had acknowledged and agreed that the economic consequences of breach were speculative and uncertain); *Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1070 (8th Cir. 2001) (affirming the district court's determination that, taking the limitation of liability clause in context of the contract as a whole, the parties intended to preclude lost profits liability); *Lindemann v. Eli Lilly & Co.*, 816 F.2d 199, 204 (5th Cir. 1987) (discussing the exclusion of consequential damages and unconscionability under Texas law).

in the context of indemnification and contracts more broadly, relies on a close examination of the contract at issue, as a whole, in context. *See Am. Bldg. Maintenance Co. v. L'Enfant Plaza Props., Inc.*, 655 A.2d 858 (D.C. 1995) ("[T]he cardinal rule of interpretation [of contracts] is to ascertain, if possible from the instrument itself, the intention of the parties, and to give effect to that intention."). Indeed, parties may contract to provide that one of them "'will protect the other from litigation costs or claims brought by third persons as well as from claims between themselves' and that 'when [such a right] is established by contract, the contract controls, so that attorney fees are awarded under such contracts with no difficulty.'" *James G. Davis Constr. Corp. v. HRGM Corp.*, 147 A.3d 332, 339 (D.C. 2016) (quoting 1 Dan B. Dobbs, *Law of Remedies* § 3.10 (3), at 402–03 (2d ed. 1993)).

Turning to the text of the contract, several provisions are informative. First, the contract itself admonishes that "[a]ll headings in this Agreement are intended solely for convenience of reference and shall not affect the meaning or interpretation of the provisions hereof." Ex. A at 2 § 1.2, (ECF No. 98-1). Second, the disputed sections are reproduced here:

**Section 6.** **Indemnification.**

**6.1** **Indemnification by USME.** USME agrees to defend, indemnify, and hold harmless Great-West, its staff, officers, directors, employees, and agents from and against any and all liability, loss, cost, expense, or claim whatsoever, including reasonable attorney's fees, incurred by Great-West or by any of the foregoing Persons: (a) by reason of USME's gross negligence or wrongful performance or non-performance of its obligations pursuant to this Agreement, provided USME is given timely written notice thereof and shall have the option to undertake and conduct defense of any such claims, and provided that Great-West has not made any voluntary payment in settlement of any such claim; or (b) as a result of any breach of, or any inaccuracy in, any of the representations, warranties, covenants, and agreements of USME contained in this Agreement. Notwithstanding any provision in this Agreement to the contrary, USME will not be liable to Great-West for any consequential, exemplary, special, incidental, or punitive damages, or for loss of revenues or profits. Furthermore, in no event shall USME's liability exceed the amount of Fees paid to USME pursuant to Section 3.1. Notwithstanding the foregoing, USME shall be liable for its own actions performed in its capacity as a Registered Municipal Advisor.

**6.2    Indemnification by Great-West.**  Great-West agrees to defend, indemnify, and hold harmless USME, its staff, officers, directors, employees, and agents from and against any and all liability, loss, cost, expense, or claim whatsoever, including reasonable attorney's fees, incurred by USME or by any of the foregoing Persons: (a) by reason of Great-West's gross negligence or wrongful performance or non-performance of its obligations pursuant to this Agreement, provided Great-West is given timely written notice thereof and shall have the option to undertake and conduct defense of any such claims, and provided that USME has not made any voluntary payment in settlement of any such claim; or (b) as a result of any breach of, or any inaccuracy in, any of the representations, warranties, covenants, and agreements of Great-West contained in this Agreement.  Notwithstanding any provision in this Agreement to the contrary, Great-West will not be liable to USME for any consequential, exemplary, special, incidental, or punitive damages, or for loss of revenues or profits.

**6.3    Exclusive Remedy.**  Each Party acknowledges and agrees that its sole and exclusive remedy with respect to any and all claims relating to the subject matter of this Agreement shall be pursuant to the indemnification provisions of Sections 6.1 and 6.2 above.

**Section 7.    Dispute Resolution.**

**7.1    Negotiation.**  Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled, when possible, by an amicable good faith effort on the part of the Parties.  Unless otherwise provided by this Agreement, an attempt to arrive at an amicable settlement shall be deemed to have failed if a dispute, controversy or claim remains unsettled sixty (60) days after either Party has provided the other Party, in writing, a "<u>notice of dispute</u>," and neither Party shall institute mediation or litigation until expiration of said sixty (60) day period.

**7.2    Mediation.**  If the Parties are unable to negotiate between themselves a resolution of a dispute for which notice has been provided in Section 7.1, the Parties shall endeavor to resolve the dispute by participating in non-binding mediation.  The mediation shall be conducted by a private mediator agreed to by both Parties or, if the Parties cannot agree, by a mediator selected by JAMS (Judicial Arbitration and mediation Services) or another nationally recognized, independent arbitration or mediation organization to which the Parties mutually agree.  The cost of any agreed-upon mediation shall be borne equally by the Parties, and each Party shall pay its own expenses.

**7.3    Litigation.**  If an attempt at an amicable settlement has failed and the dispute has not been resolved by non-binding mediation as provided for in Section 7.2 within ninety (90) days of the initiation of mediation, the dispute shall be litigated in any court of competent jurisdiction.  The prevailing party shall be entitled to recover from the non-prevailing party its reasonable expenses of litigation, including attorneys' fees.

Ex. A at 9–10, §§ 6–7.

Great-West points to a contractual provision that falls within the section titled "Indemnification," arguing that the "operative language of the exclusive remedy provision (Section 6.3) identifies the sections above it (Sections 6.1 and 6.2) as containing the *only* remedy for all claims related to the Agreements, and that provision precludes recovery of, among other things, lost revenue or lost profits." Mot. to Exclude at 7. Moreover, Great-West claims that damages limitations "commonly appear in contract sections labeled 'indemnity,' 'indemnification,' 'hold harmless,' and the like." *Id.* Here, despite where the language "[n]otwithstanding anything in this Agreement to the contrary . . ." appears in the contract, Great-West argues that the phrase "trumps all other language," and cites out-of-circuit authority to that effect. Reply at 3–4; *see Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 917 (2d Cir. 2010) ("This Court has recognized many times that under New York law, clauses similar to the phrase '[n]otwithstanding any other provision' trump conflicting contract terms.").

This is an unnatural reading of the contract.[2] Following the contract's instruction not to rely on the headings for substantive guidance, the first and simplest textual reason for this conclusion is that Section 6.3 and Section 7.1 refer to potential claims they treat using distinct language. Section 6.3 reads as follows: "Each Party acknowledges and agrees that its sole and exclusive remedy *with respect to any and all claims relating to the subject matter of this*

---

[2] It is also an understanding of the contract that Great-West did not have at the beginning of this litigation. Great-West filed this motion on October 27, 2017, although this litigation officially began on April 7, 2016. Compl. Included even in Plaintiffs' initial complaint was a reference to harm caused by "the loss of Program participants and *potential participants*," Compl. ¶ 32 (emphasis added), surely suggesting potentially consequential damages or lost revenues and profits. Great-West never hinted that it understood the listed damages to be precluded under the contract. *Cf. Williams v. Johnson*, 747 F. Supp. 2d 10, 20 (D.D.C. 2010) (noting that "the deadline to file dispositive motions has long since passed"). Although the Court does not reach this extrinsic evidence, it would provide "a strong indication" that neither party intended the contract's indemnification section to preclude damages in first-party actions. *See Davis Constr.*, 147 A.2d at 340 n.8.

7

*Agreement* shall be pursuant to the indemnification provisions of Sections 6.1 and 6.2." Ex. A at 10 § 6.3 (emphasis added). The language in Sections 6.1 and 6.2 also refers to indemnifying against "claims." *Id.* at 9 §§ 6.1, 6.2. By contrast, Section 7.1 reads as follows: "*Any dispute, controversy or claim arising out of or relating to this Agreement, or breach hereof*, shall be . . ." *Id.* at 10 § 7.1 (emphasis added). Sections 7.2 and 7.3 use only the terms "dispute" to refer to conflict between the parties. *Id.* at 10 §§ 7.2, 7.3. The difference in language shows a different understanding of first- and third-party claims. Section 6.3 refers to "any and all claims relating to the subject matter of this Agreement" *brought by third parties*, and Section 7.1 refers to "[a]ny dispute, controversy or claim arising out of or relating to this Agreement, or the breach thereof" resulting in a dispute *between the parties*.

Second, in context, the second sentence in Sections 6.1 and 6.2 is reasonably read to intend a modification of the sentence before it, thus limiting the types of damages either party can pursue *as a result* of third party claims, not in a context of breach or dispute between the parties to the contract. *See PCH Mut. Ins. Co., Inc. v. Casualty & Surety, Inc.*, 750 F. Supp. 2d 125, 142–43 (D.D.C. 2010) ("The inquiry is an objective one: the court must determine what meaning a 'reasonable person in the position of the parties' would attach to the disputed language.") (citing *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009)).

Third, Plaintiffs accurately point out that the attorneys' fees provision in Section 7.3 would be superfluous if Sections 6.1 and 6.2 also governed first-party disputes. Response at 5–6; *cf. Corley v. United States*, 556 U.S. 303, 314 (2009) ("The Government's reading is thus at odds with one of the most basic interpretive canons, that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

Finally, in *Hensel Phelps*, the defendant contended that the "Agreement's indemnification clause used broad and expansive language and contained no limitation confining its scope only to third-party claims." *Id.* Explaining that "objective analysis also considers the context in which the words are used," *id.*, and that "indemnification clauses have traditionally been used and interpreted as extending only to third-party claims," *id.*, the D.C. Circuit held that "no clear and unequivocal intent to include first-party claims appears on the face of the instrument and, construing the clause strictly, we decline to expand the scope of its reach," *id.*

Thus, the Court finds that the natural reading of the contract does not preclude consequential, exemplary, special, incidental, or punitive damages, or loss revenues or profits, for disputes arising between the parties to the contract. Accordingly, Great-West's motion is denied.

December 8, 2017

_____
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE